UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID WAYNE ENGLAND, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PLYMOUTH, MATTHEW EMENHISER, DAVID BACON, <br><br> Defendants. | Case No. 3:20-CV-759 JD |

## OPINION AND ORDER

David England is a former resident of Plymouth, Indiana. In 2018, Mr. England was arrested by Officer Matthew Emenhiser of the Plymouth Police Department in front of his home pursuant to two arrest warrants. Accounts of the arrest vary, but the parties agree that Officer Emenhiser tased Mr. England when he attempted to enter his home after indicating he intended to look for paperwork relevant to his arrest. After being tased, Mr. England was arrested and transported to the hospital. Subsequently, Mr. England has struggled with medical difficulties allegedly acerbated by the tasing.

As a result, Mr. England filed this suit alleging excessive force, battery, negligence, libel, slander, defamation, intentional infliction of emotional distress, and possibly false arrest. Mr. England brings these claims against Officer Emenhiser in his individual and official capacities and Plymouth Police Chief David Bacon in his individual and official capacities.[1] Mr. England also brings claims under the doctrine of *respondeat superior* against both Chief Bacon and the City of Plymouth for his state law tort claims. In response, Defendants Officer Emenhiser, Chief

---

[1] A suit against an officer in his official capacity operates as a suit against the municipality. *Monell v. Dep't of Soc. Servs of City of New York*, 436 U.S. 653, 690–91 (1978).

Bacon, and the City of Plymouth have jointly moved for summary judgment on Mr. England's claims, advancing nine arguments.

The Court denies summary judgment on Mr. England's excessive force claim against Officer Emenhiser in his individual capacity, finding a material issue of fact exists. The Court also denies summary judgment on Mr. England's state law battery claim, noting it rises and falls with his excessive force claim under Indiana law and that it may only be brought against the City of Plymouth under Indiana Code § 34-13-3-5(b). The Court grants summary judgment on Mr. England's negligence, libel, slander, defamation, intentional infliction of emotional distress, and false arrest claims, finding Mr. England failed to adequately defend the claims in his response brief and consequently has waived and abandoned them. The Court also grants summary judgment on all claims against Chief Bacon, finding that Mr. England failed to plead facts necessary to allege liability for Officer Emenhiser's actions. Finally, the Court strikes Mr. England's *respondeat superior* allegations against the City of Plymouth as duplicative of his battery claim and against Chief Bacon as precluded as a matter of law.

   A.  **Factual Background**

On August 17, 2018, Mr. England was arrested outside his home pursuant to two arrest warrants for failure to appear at a fines and costs hearing. The hearing was related to Mr. England's prior misdemeanor convictions for battery against an officer in 2013 and check deception in 2011. The events, thought hotly contested, unfolded as follows. On August 17, 2018, Mr. England was standing outside his home at the intersection of his driveway and the sidewalk after a doctor's appointment. He was unarmed. He noticed Officer Emenhiser drive by in a fully marked police car. Officer Emenhiser had noted there was a warrant for Mr. England's arrest prior to his shift and planned to serve it that day. Officer Emenhiser was familiar with Mr.

England and the property because he had responded to domestic disturbances at the property several years before. Seeing Mr. England, Officer Emenhiser decided to execute the warrant. He turned the vehicle around and stopped in front of Mr. England's house. Officer Emenhiser emerged from his vehicle dressed in full uniform with badge and standard equipment. From here, the factual narratives diverge.

Mr. England claims that Officer Emenhiser noted that Mr. England "looked different" from the last time they had seen each other and asked him, "Do you have warrants?" Mr. England backed away several steps and told Officer Emenhiser he would look for his warrant paperwork inside his house and return. Mr. England alleges he quickly walked toward the house. According to Mr. England, he was not explicitly told he was under arrest and was not told to stop or warned that he would be tased. Mr. England also alleges he walked quickly but did not run. As Mr. England reached the house, Officer Emenhiser tased him for an indeterminable amount of time. Mr. England fell to the ground and Officer Emenhiser told him to "stop resisting." He was arrested and taken to the hospital. Mr. England has alleged his existing cardiac issues worsened after the tasing, ultimately resulting in the implantation of a pacemaker in October 2018.

Officer Emenhiser does not share this version of events. Officer Emenhiser claims that upon exiting the car, he asked Mr. England if his name was David. He then told Mr. England to put his hands behind his back. Mr. England began to back away and mentioned checking some paperwork inside his house. Officer Emenhiser then told him, "We're not going to do that right now. You need to put your hands behind your back. You're under arrest." Mr. England turned his back and walked towards the residence. Officer Emenhiser alleges he then repeatedly told Mr. England to stop and began to follow him. As Mr. England reached the house, Officer Emenhiser yelled that Mr. England must stop or he would be tased; upon hearing this warning,

3

Mr. England began to run. When Mr. England reached the door, Officer Emenhiser deployed the taser once for five seconds, striking Mr. England. Officer Emenhiser then handcuffed and arrested Mr. England.

No third-party witnesses are available to testify to the aforementioned events. The log for the taser used by Officer Emenhiser that day indicates the taser was triggered once during the relevant time period for one five-second cycle.

### B. Standard of Review

Summary judgment is warranted when the evidence viewed in a light most favorable to the non-moving party presents no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, all disputed issues of fact are to be resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Summary judgment cannot be used to resolve swearing contests between litigants," especially where the parties "present two vastly different stories." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The non-moving party need only "come forward with evidence demonstrating that there is a pending dispute of material fact; courts must resist the temptation to require the non-movant to match the moving party witness for witness, as such evidence requirements belie an improper credibility determination." *Id*. at 770–71. As the excessive force reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [] summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

### C. Standards for Excessive Force and Qualified Immunity

The Fourth Amendment protects the right of the people against unreasonable searches and seizures. U.S. Const. amend. IV. "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). This inquiry involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. The "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). There are two prongs to the qualified immunity inquiry: (1) whether the facts alleged, taken in the light most favorable to the victim, show that the officer violated a constitutional right and (2) whether the right was clearly established at the time of injury. *Payne*, 337 F.3d at 775. Courts look to the "objective legal reasonableness of the action, assessed in light of the legal

rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244. "That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Becker v. Elfriech*, 821 F.3d 920, 925 (7th Cir. 2016). The unlawfulness is apparent where the right is well-established and defined at some level of specificity. The established nature of the right is dictated by controlling authority or a robust consensus of cases of persuasive authority. *District of Columbia v. Wesby*, 138 S.Ct. 277, 589 (2018). The right must be more specific than the right to be free from excessive force in a general sense; the illegality of the conduct must obviously flow from the right. *Becker*, 821 F. 3d at 928.

### D. Discussion

In response to Mr. England's excessive force claim, defendants argue Officer Emenhiser's use of force was reasonable and that he is entitled to qualified immunity. The Court declines to grant summary judgment on Mr. England's excessive force claim because a dispute of material fact exists precluding findings of reasonable use of force or qualified immunity. The Court also declines to grant summary judgment on Mr. England's battery claim, finding the same dispute of fact controls. The Court grants summary judgment on Mr. England's other state law and vicarious liability claims for the reasons explained below.

#### 1. *Excessive Force Claim*

The Court declines to grant summary judgment on Mr. England's excessive force claim, finding a material dispute of facts exists regarding the reasonableness of the seizure. Defendants commit two major errors in their briefing: failing to construe the facts in the light most favorable to the non-moving party and relying upon overbroad conceptions of active resistance and flight.

First, though Defendants repeatedly state they perform their analysis using Plaintiff's version of facts, Defendants' briefing relies on a construction of the facts highly deferential to Officer Emenhiser. (DE 23 at 8 n.2.) Merely stating that one is adopting his opponents set of facts does not operate to do so. Defendants' arguments omit facts where they are disputed instead of implementing Mr. England's facts and include self-serving inferences with no connection to Mr. England's statement of facts (e.g., "If Plaintiff were permitted entry into the home in this context, Officer Emenhiser would have left himself exposed to a dangerous situation" (DE 23 at 9)). Thus, the Court must construe the facts in the light most favorable to Mr. England, taking his version of the facts where they materially differ from Officer Emenhiser's. The key facts alleged by Mr. England but not adopted by Defendants are as follows: Officer Emenhiser did not tell Mr. England he was under arrest. Officer Emenhiser said nothing in response to Mr. England's statement that he would go look for his paperwork. Mr. England walked quickly toward the house but did not run. Officer Emenhiser did not tell him to stop. Officer Emenhiser did not warn Mr. England he would be tased and was, in fact, totally silent until tasing him. At no time did Mr. England resist or threaten Officer Emenhiser.

The Court now considers these facts under the *Graham* framework. The seizure must be reasonable in light of the totality of the circumstances, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Defendants assert Mr. England's prior arrest history and reputation justified a reasonable officer's interpretation of the situation as extremely dangerous. (DE 23 at 10.) As an initial matter, the severity of the crime at issue was arguably very low: Officer Emenhiser was executing an arrest warrant for a missed court date, a minor offense of the same nonviolent,

misdemeanor character as failing to signal when changing lanes. *Cf. Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (failing to signal while changing lanes not a significant violation under *Graham*). While the underlying offenses leading to the missed court date include a misdemeanor battery upon an officer five years prior, the Court is not convinced this circumstance meaningfully escalates the severity of the crime at issue. Similarly, Defendants argue the danger to Officer Emenhiser was very high.[2] Though the danger to Officer Emenhiser may have increased if Mr. England entered his home, at the time of the seizure, he presented minimal danger as an unarmed and allegedly non-resisting subject outside his home. The Court is not convinced the danger presented by this scenario justifies a significant use of force. *See Becker, 821 F.3d at 927* (holding significant use of force may have been unreasonable against suspect accused of threatening to kill relative with knife after several weeks elapsed and suspect was no longer armed).

Next, *Graham* also instructs the Court to consider whether the suspect was actively resisting. Force may be justified based on the suspect's level of resistance; active resistance may justify more force than passive resistance or no resistance. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 730 (7th Cir. 2013). Though Officer Emenhiser attempts to assert his "personal definition" of active resistance, active resistance as used in the Fourth Amendment context has a legal definition. Active resistance requires aggression or struggling; willful noncompliance amounts only to passive resistance requiring minimal use of force. *Phillips v. Community Ins.*

---

[2] Defendants cite several cases discussing suspicious behavior in the context of probable cause to emphasize the danger presented by Mr. England. *E.g. United States v. King,* 439 F. Supp 3d (N.D. Ill. 2020) (DE 23 at 9); *Illinois v. Wardlow*, 528 U.S. 119 (2000) (DE 23 at 10). These cases are unconvincing; they hold similar behavior to be *suspicious*—thus creating probable cause—but the reasonableness inquiry is concerned with whether the suspect was *dangerous*. Danger and suspiciousness are not the same thing. *Wilkins v. May*, 872 F.2d 190, 193 (7th Cir. 1989) (distinguishing danger under *Garner* from probable cause).

*Corp*, 678 F.3d 513, 524 (7th Cir. 2012). The facts as alleged by Mr. England do not indicate any resistance, passive or active.

The Court turns now to Mr. England's potential flight, which carries significant weight in the analysis. Incredibly, Defendants admit there is a dispute regarding the words exchanged between the parties but brush it off as immaterial, arguing that Mr. England's movement away from Officer Emenhiser constitutes flight regardless. (DE 23 at 8.) The dispute is not immaterial—it's the whole ballgame. *See Kasey v. McCulloh*, 2011 WL 1706092, at *5 (N.D. Ill. May 5, 2011) (declining to grant summary judgment where there was a dispute regarding whether the officer told the arrestee to stop prior to arrestee's attempt to leave). Not all movement is flight, and one cannot flee someone who has not told him to stop.[3] Mr. England and Officer Emenhiser do not agree about whether Mr. England was told to stop. This warning, or lack thereof, significantly colors Mr. England's subsequent actions. Our case law supports the obvious proposition that someone must know they are not to move for their subsequent movement to qualify as flight. Indeed, the Supreme Court's consummate case regarding flight, *Tennessee v. Garner*, notes the titular arrestee fled "after being told to halt." 471 U.S. 1, 1 (1985); *see also* I.C. § 35-44.1-3-1(a)(3) (defining resisting law enforcement by flight as someone who knowingly or intentionally flees from a law enforcement officer after the officer has identified himself or herself *and ordered the person to stop*). *Pekrun v. Puente* is instructive. 172 F. Supp. 3d 1039 (E.D. Wis. 2016). In *Pekrun*, the court refused to grant a motion for summary judgment, holding a reasonable jury could find an officer's significant use of force was

---

[3] Certainly, the Court does not enforce upon officers a requirement to use magic words in executing an arrest; the Court is as open to "halt" or "freeze" as "stop," and acknowledges that nonverbal communication may constitute a sufficient warning such that further retreat constitutes flight. *See Scott v. Harris*, 550 U.S. 372, 374 (2007) (officer engaged his lights and sirens in a car chase); *United States v. King*, 439 F. Supp. 3d 1051, 1053 (N.D. Ill. 2020) (officers drew and pointed guns at King and ordered him to put his hands up). However, the facts as alleged by Mr. England do not present a close case.

unreasonable where the officer "did not order the plaintiff to stop and did not warn the plaintiff that he would use force against him if he did not stop." *Id*. at 1045. The court noted the plaintiff, who was only suspected of committing a minor offense, "had not engaged in any behavior to suggest that he posed a threat to anyone's safety or that he might flee if ordered by a police officer to stop." *Id*. According to Mr. England, Officer Emenhiser said nothing and did nothing to indicate Mr. England should stop; therefore, Mr. England did not engage in flight.

Defendants make much of Mr. England's admission that he backed away from Officer Emenhiser and even "picked up the pace" of his walk, but this admission alone is insufficient to constitute flight. The qualitative nature of the movement is relevant to the determination of whether the suspect fled. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) (refusing to grant summary judgment where parties disputed whether the plaintiff walked or ran and whether his intention in rolling on the ground was to flee). Thus, the factual dispute concerning whether Mr. England walked or ran and why is material to a decisive issue. This undermines Defendants' suggestion that movement as alleged by Mr. England constitutes flight justifying the use of force in question.

A clearer picture of the situation emerges under the appropriate framework. Assuming Mr. England's assertion of facts to be true, he was charged with minor offenses, was unarmed, was not threatening to harm the police officer, was not resisting or evading arrest, and was not attempting to flee. These circumstances, considered together, indicate Mr. England was not resisting or dangerous. It has long been clearly established in this circuit that an officer may not use significant force on such a non-resisting or passively resisting suspect. *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016). Deploying a taser represents significant force. *Abbott*, 705 F.3d at 732. If the facts are as alleged by Mr. England, Officer Emenhiser deployed significant force on

a non-resisting arrestee without any warning. This unquestionably would exhibit unreasonable force in executing the arrest.

Of course, it is not entirely clear what happened on August 17, 2018; the Court expresses no view regarding the ultimate truth of Mr. England's or Officer Emenhiser's description of the relevant events. However, under the proper motion for summary judgment standard, with its necessary restrictions and inferences, it is clear Mr. England's excessive force claim survives. The Court therefore declines to grant summary judgment on Mr. England's excessive force claim on the basis of reasonable use of force.

A final note: Mr. England's complaint states he is suing Officer Emenhiser in his individual and official capacities. Mr. England has waived his official capacity claim by failing to plead or brief any *Monell* factors entitling him to sue the public agency. *Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000) ("a plaintiff seeking to pursue an official capacity claim must be able to point to a theory that entitles it to sue the public agency"); *see Monell v. Dep't of Soc. Servs of City of New York*, 436 U.S. 653, 690–91 (1978). As *Monell* stated, official capacity suits operate as suits of the government entity and may only be brought where there is an allegation that official policy or well-settled custom is responsible for the deprivation of rights. *Id*. Mr. England has never pointed to any official policy or well-settled custom. Failing to plead or present evidence of an essential element of a claim constitutes abandonment warranting summary judgment. *See Fidler v. Indianapolis*, 428 F. Supp. 2d 857, 868 (S.D. Ind. 2006). Therefore, Mr. England's excessive force claim against Officer Emenhiser may only proceed to the extent it is brought in his individual capacity.

### 2. Qualified Immunity

Defendants next argue summary judgment on the excessive force claim is appropriate because Officer Emenhiser is entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson*, 555 U.S. at 231. Two conditions must be satisfied to overcome the defense of qualified immunity: (1) the facts alleged, taken in the light most favorable to the victim, show that the officer violated a constitutional right; and (2) the right was clearly established at the time of the injury. *Payne*, 337 F.3d at 775. As shown by the analysis above, for the purposes of summary judgment, Mr. England's factual allegations satisfy the first prong. The Court now turns its attention to the second prong of the analysis.

The Court must ask whether the right to be free from excessive force particular to the circumstances was clearly established at the time of the injury. The analysis turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time." *Pearson*, 555 U.S. at 244. The right must be settled law, which is dictated by controlling authority or robust consensus of cases of persuasive authority. *Wesby*, 138 S.Ct. at 589. In considering the authority, "the circumstances and conduct in the case establishing the right cannot be drastically different" than those in question. *Day v. Wooten*, 947 F.3d 453, 461 (7th Cir. 2020).

In 2018, it was well-established that tasing a passively resisting or non-resisting suspect violated the suspect's Fourth Amendment rights. Though Mr. England is not required to identify a case with exact identity of facts or implements of force, the Seventh's Circuit's precedent precludes the use of force as alleged by Mr. England on both a general and instrument-specific level. In *Abbott v. Sangamon*, the court noted that "[p]rior to 2007, it was well-established in this

12

circuit that police officers could not use significant force on non-resisting or passively resisting suspects." 705 F.3d at 732; *see also Becker*, 821 F.3d at 928. This general prohibition, which is well-established, clearly applies; as stated above, Mr. England was a non-resisting suspect and deploying a taser represents a significant use of force. However, the case law regarding the use of tasers specifically is particularly enlightening. *Abbott* further held that it was unlawful to deploy a taser in dart mode against a non-resisting suspect who had already been tased. 705 F.3d at 732. Other Seventh Circuit cases reiterate and clarify *Abbott's* holding, putting a reasonable officer on notice that he may not tase passively resisting or non-resisting suspects. One example, *Williams v. Ind. State Police Dept.*, states a categorical prohibition on tasing non-resisting suspects. 797 F.3d 468, 480 (7th Cir. 2015) (distinguishing officer's constitutional use of a taser from a scenario characterized by "passive rather than active resistance without any real sense of urgency or threat to others"). Other courts within the circuit have found officers were fairly and clearly warned away from tasing passively resisting or non-resisting suspects by 2016, two years prior to Mr. England's injury. *Todero v. Blackwell*, 838 F. Spp. 3d 826, 833 (S.D. Ill. 2019). By December 2018, just two months after Mr. England's arrest, the Seventh Circuit again reiterated the rule in a perfunctory manner, evidencing its status as a well-established right. *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018) (citing *Abbott* for the "guidepost" proposition that "an officer may not use significant force (like a taser) against a 'non-resisting or passively resisting' subject"). Because the use of force was excessive and the right of a suspect to be free from significant force in the circumstances alleged was clearly established at the time of the injury, Officer Emenhiser is not entitled to qualified immunity and the Court declines to grant summary judgment on Mr. England's excessive force claim.

   3. ***False Arrest Claim***

The Court finds Mr. England has abandoned his false arrest claim if he intended to bring one. Mr. England's complaint is not a model of clarity. Paragraph thirty-nine of the complaint reads only, "Emenhiser Unreasonably Seized England, in violation of the 4th Amendment." (DE 4 at 5.) Defendants appear to have construed this paragraph as bringing a claim for false arrest and have devoted two nonfrivolous arguments to its dismissal. (DE 23 at 1.) Mr. England does not mention or argue in defense of any false arrest claim in his response tso Defendants' motion for summary judgment. Therefore, to the extent any existed, Mr. England's false arrest claim is abandoned. *See Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003) (finding a claim was abandoned where nonmovant failed to argue the claim in opposition to summary judgment). Accordingly, the Court grants summary judgment on Mr. England's false arrest claim and orders its dismissal.

### 4. *State Law Battery Claim*

Both parties agree Mr. England's state law battery claim rises or falls with his excessive force claim. (DE 23 at 23; DE 25 at 13.) They are correct. If an officer uses unnecessary or excessive force, the officer may commit a battery. *Williams v. Ind. State Police*, 26 F. Supp. 3d 824, 863 (S.D. Ill. 2014). Indiana's excessive force standard effectively parallels the federal Fourth Amendment. *Gupta v. Melloh*, 19 F.4th 990, 1002 (7th Cir. 2021). Though the Indiana Tort Claims Act limits liability for other torts, an officer's use of excessive force or unreasonable force is not shielded from liability or subject to immunity under the Indiana Tort Claims Act because the Indiana Code limits police officers to using only the force that is reasonable to effectuate an arrest. *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010). Because a material dispute of facts exists regarding Mr. England's Fourth Amendment excessive force claim, the

14

Court similarly declines to grant Defendants' motion for summary judgment on Mr. England's state law battery claim.

The Court now turns to the liability of the individual Defendants. Under Indiana Code § 34-13-3-5(b), "a lawsuit alleging that an employee acted within the scope of the employee's employment bars an action against the employee personally." Courts within our circuit interpret this subsection to allow state law battery claims that would normally be brought against the officer to proceed only against the municipality. *Reiner v. Dandurand*, 33 F. Supp. 3d 1018,1032–33 (N.D. Ind. 2014) (comparing the liability shift to *respondeat superior*). *Fidler*, 428 F. Supp. 2d at 866. Mr. England has conceded that he alleges Officer Emenhiser acted within the scope of his employment. (DE 25 at 13.) Therefore, the Court grants summary judgment in favor of Officer Emenhiser and Chief Bacon on the battery claim, and it will proceed against only the City of Plymouth.

Mr. England's complaint further alleges Chief Bacon and the City of Plymouth are liable for Officer Emenhiser's state law torts, including battery, under the doctrine of *respondeat superior*. The Court strikes these allegations as duplicative or barred as a matter of law. *Respondeat superior* is a "tort theory of vicarious liability [that] creates liability for a principal where it would not otherwise exist." *Interim Healthcare of Fort Wayne, Inc. v. Moyer ex rel. Moyer*, 746 N.E.2d 429, 431 (Ind. Ct. App. 2001). As the theory applies to the City of Plymouth, it presents a roundabout avenue to relief already afforded under I.C. § 34-13-3-5(b). Where a statute already causes an employer to be liable for the wrongs of its employees, bringing the same underlying claim under a theory of *respondeat superior* is duplicative, and the duplicative claims may be properly dismissed. *Thanongsinh v. Board of Educ.*, 462 F.3d 762, 771 n.7 (7th

Cir. 2006). Therefore, the Court strikes Mr. England's *respondeat superior* theory of liability against the City of Plymouth as duplicative of his battery claim.

The Court also strikes Mr. England's assertion of *respondeat superior* liability against Chief Bacon. Mr. England cannot prevail on a *respondeat superior* theory against Chief Bacon as a matter of law. "There is no principle of superiors' liability, either in tort law generally or in the law of constitutional torts. To be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct." *Jones v. City of Chicago*, 856 F.2d 985, 9925 (7th Cir. 1988). The allegation of *respondeat superior* liability against Chief Bacon is therefore properly stricken by the Court.

### 5. *Other State Law Claims*

Mr. England additionally pled claims for intentional infliction of emotional distress, "libel, slander, and/or defamation," "libel per se, slander per se, and/or defamation per se," and negligence (DE 4 at 5.) Defendants argue these claims should be dismissed because they are barred by Indiana Code § 34-13-33(8) and Mr. England's defamation, slander, libel, and IIED claims fail as a matter of law. (DE 23 at 1.) The Court need not decide these arguments because Mr. England has conceded or abandoned his non-battery state law claims by failing to respond in opposition to Defendants' argument for summary judgment. [4]

Mr. England has abandoned his non-battery state law claims. Defendants targeted multiple arguments for summary judgment at each non-battery state law claim, and none of them are adequately addressed in Mr. England's response. "The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary

---

[4] It should be noted that Mr. England's failure to concede his claims explicitly or address Defendants' arguments results in drain upon the judiciary's finite resources. If Mr. England intended to abandon his claims, it is best practice to inform the Court as such.

16

judgment." *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014). Waiver of a nonfrivolous argument at summary judgment can constitute abandonment of a claim. *See Donelson v. City of Chicago*, 272 F.Supp.2d 717, 726 (N.D. Ill. 2003) ("no serious effort" to respond to argument on summary judgment resulted in waiver of the argument and abandonment of the claim). Mr. England does not expend a single word to defend his defamation, slander, libel, or intentional infliction of emotional distress claims from Defendants' argument that he failed to state prima facie cases, which clearly constitutes waiver. *See Palmer*, 327 F.3d at 597. He also fails to adequately defend all his non-battery state law claims from Defendant's argument they should be dismissed pursuant to a provision of the Indiana Tort Claims Act, Indiana Code § 34-13-3-3(8). Dismissal under this section is proper because the provision's broad immunity applies where the employee acted in his scope of employment and because Mr. England neglected to meaningfully respond to the argument. *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014). Mr. England cites only the legal standard and one unreported case in response to this argument; he does not provide any legal analysis, and the entire argument is two sentences long. (DE 25 at 13.) Arguments that are underdeveloped are deemed waived. *See Barnes v. LaPorte County*, 621 F. Supp. 2d 642, 646 (N.D. Ind. 2008). Mr. England's perfunctory briefing is inadequate to respond to Defendants' argument, and the Court will not perform the briefing for Mr. England *sua sponte*. *See Barnes*, 621 F. Supp. 2d at 646 (finding an argument underdeveloped and insufficient where it stated the standard and provided one additional conclusory sentence); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("If judges are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendant's reasoning"). Furthermore, Defendants have stated a plausible and nonfrivolous

defense. *See Mwangangi v. Nielsen*, 48 F.4th 816, 832–33 (7th Cir. 2022) (officers are protected from state tort liability under the statute's provisions while arresting plaintiff pursuant to a valid arrest warrant even if they "engage in allegedly egregious conduct"); *Serino v. Hensley*, 735 F.3d 588, 595–96 (7th Cir. 2013). For the aforementioned reasons, the Court grants Defendants' motion for summary judgment on Mr. England's defamation, slander, libel, intentional infliction of emotional distress, and negligence claims.

### 6. *Dismissal of Chief Bacon*

Defendants argue the claims against Chief Bacon in his individual capacity must be dismissed for lack of personal involvement. (DE 23 at 2.) Mr. England did not respond to this argument in his response to Defendants' motion for summary judgment other than including this sentence: "Chief David Bacon is responsible for establishing and promulgating Plymouth Police Department policy, and for the training of officers under his command." (DE 25 at 3, ¶ 13.) This statement alone is inadequate to allege personal involvement or avoid waiver of the argument. *See United States ex rel. Morgan v. Champion Fitness, Inc*., 368 F. Supp. 3d 1198, 1214–15 (C.D. Ill. 2019) (one-sentence argument underdeveloped). Thus, the Court finds the claim against Chief Bacon in his individual capacity is dismissed as abandoned and because plaintiff has made no effort to present evidence that would infer that the conduct of Officer Emenhiser was the result of departmental policy or lack of training. Regarding the official capacity claims against Chief Bacon, as with the official capacity claim against Officer Emenhiser, Mr. England failed to allege any *Monell* factors. As such, the claim against Chief Bacon in his official capacity is dismissed.

**E. Conclusion.**

In conclusion, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment (DE 22). In particular, the Court:

- GRANTS Defendants' motion for summary judgment on Mr. England's false arrest, libel, defamation, slander, intentional infliction of emotional distress, *respondeat superior* and negligence claims;

- GRANTS Defendants' motion for summary judgment as to all claims against Chief David Bacon;

- DENIES Defendants' motion for summary judgment on Mr. England's excessive force claim against Officer Emenhiser in his individual capacity;

- DENIES Defendants' motion for summary judgment on Mr. England's state law battery claim against the City of Plymouth.

SO ORDERED.

ENTERED: November 23, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court